UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L. PERRIGO COMPANY,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.                                                  Case No. 1:08-cv-00348

STEWART ROBINS, et al.,

        Defendants.
_____/

## OPINION AND ORDER

This matter is before the court on Plaintiff's Motion for Summary Judgment (Dkt. 41). This is a breach of contract action based on a default of a loan. In 2006, plaintiff L. Perrigo Company ("Perrigo") made a loan to one of its suppliers, American SoftGel Products, LLC ("ASG"). ASG's principals, defendants Stewart Robins and Sidney Lewis, personally guaranteed the loan. When ASG defaulted on the loan and went into bankruptcy, Perrigo filed this suit against the defendants to collect on the personal guaranties. Under the guaranties, each guarantor is liable for an amount equal to fifty percent of the unpaid debt to the extent the unpaid debt exceeds "the orderly liquidation value" of ASG's assets. ASG's assets have since been orderly liquidated. Each defendant submitted a response but no evidence in opposition to Plaintiff's requested relief. Neither defendant appeared at the hearing held July 10, 2009. There are no issues of material fact regarding defendants' liability under the guaranties. Accordingly, summary judgment will be entered in Perrigo's favor.

## I. Facts

Perrigo's claims against defendants arise from ASG's default under its loan agreement dated June 23, 2006 (together with all amendments, the "Loan Agreement") (Exhibit A to Plaintiff's Brief, Dkt. 42), with Perrigo. ASG defaulted under the Loan Agreement by failing to repay the loan and filing for bankruptcy. Defendants Stewart Robins and Sidney A. Lewis are managers, officers, and the majority owners of ASG. They signed written guaranties in which they unconditionally guaranteed the obligations of ASG under the Loan Agreement (Exhibit B to Dkt. 42). Under the guaranties, each guarantor is liable for an amount equal to fifty percent of the unpaid debt to the extent the unpaid debt exceeds "the orderly liquidation value" of ASG.

Perrigo manufactures and markets over-the-counter pharmaceuticals (Affidavit of John Hendrickson, ¶ 2, Exhibit C to Dkt. 42.) In 2006, Perrigo entered into discussions with defendants and their agents for the purchase of ASG's assets. Rather than Perrigo purchasing the assets of ASG, defendants and Perrigo agreed to enter into a lending and supply relationship where Perrigo initially loaned ASG three million dollars for ASG to acquire and upgrade its facility. *See id* at ¶ 3. The Loan Agreement and the supply agreement (Exhibit D to Dkt. 42) were entered into by Perrigo as the lender, ASG as the borrower and supplier, and the defendants as guarantors. In return for the loan, ASG executed a Term Loan Note on June 23, 2006 in the original amount of $3,000,000 (Exhibit E to Dkt. 42) and the defendants executed the guaranties. The parties later entered into a First Amendment to Loan Agreement on October 16, 2006 (Exhibit F to Dkt. 42) to increase the amount of the loan by one million dollars (from $3,000,000 to $4,000,000). ASG executed a Term Loan Note on October 16, 2006 in the original amount of $1,000,000 (Exhibit G to Dkt. 42) (the two term loan notes are hereinafter referred to as the "Notes").

Under the guaranties, the defendants agreed to guaranty ASG's debt under the Loan Agreement. Defendants ratified their guaranties to cover the additional $1,000,000.00 of indebtedness given under the First Amendment to the Loan Agreement (Exhibit H to Dkt. 42). ASG has defaulted under the Loan Agreement and the Notes by, among other reasons, payment default and filing for bankruptcy on August 17, 2007.

As of the date of the complaint (February 27, 2008), ASG and defendants owed Perrigo $4,097,433 in principal, plus interest, costs and attorneys' fees, under the Loan Agreement and Notes. (Hendrickson Aff. ¶ 6). That amount has since been reduced by $256,445.47, which represents the proceeds received from the liquidation of Perrigo's collateral (as discussed below).

Perrigo received relief from the automatic stay in ASG's bankruptcy case and obtained possession of its collateral from ASG. (Hendrickson Aff. ¶ 5). The collateral (essentially, the production equipment from ASG's production facility) was then removed from Nevada to Michigan. (*Id.*). Through its attorneys, Perrigo contacted the major pharmaceutical equipment liquidators and auctioneers in the country regarding the liquidation of the ASG collateral, including, DoveBid, Inc. d/b/a GoIndustry-DoveBid, EquipNet, Inc., Keith Machinery, Aaron Equipment Company, Healthstar, Inc. and Phoenix Equipment. (Affidavit of Wes Knapp, ¶ 4, Exhibit I to Dkt. 42). Pictures and descriptions of the collateral were provided to the prospective liquidators. (*Id.*). After discussions with each of the liquidators and review of their respective proposals, Perrigo chose DoveBid to market and liquidate the ASG collateral as Dovebid was highly experienced in liquidating pharmaceutical equipment worldwide and it submitted the proposal that provided the best return for Perrigo. (*Id.* at ¶ 5).

Dovebid immediately began marketing the collateral through emails to prospective purchasers, online advertising, marketing campaigns directed at pharmaceutical companies, among other things. (*Id.* at ¶ 6). Notice of the disposition of collateral was sent to all interested parties on October 23, 2006, in accordance with the provisions of the Uniform Commercial Code. (Exhibit J to Dkt. 42). Perrigo then sent a letter to defendants asking the defendants to contact Dovebid if they were either interested in purchasing some or all of the equipment or knew of anyone that was. (Exhibit K to Dkt. 42).

The collateral was made available for inspection by prospective purchasers several weeks before the online auction. The auction was held between December 11 and December 16, 2008. (Affidavit of James Spencer, ¶ 6, Exhibit L to Dkt. 42). There were 75 registered bidders from ten different countries. (*Id.*). Final bids brought buyers in from twelve states, Canada and Germany. (*Id.*). In total, the liquidation grossed $256,445.47. (*Id.*)

On January 28, 2009, Perrigo issued its First Set of Discovery Requests to Defendants. In their responses, Defendant Stewart Robins admitted the following:

He signed his guaranty (Exhibit M to Dkt. 42, Answer to Request Nos. 1 and 2)

He guaranteed a portion of the Debt (*Id*. at No. 3)

The guaranty is binding and enforceable (*Id*. at No. 4)

The loans from Perrigo have not been paid in full (*Id*. at Nos. 5 and 6)

He signed the ratifications to the guaranties (*Id*. at Nos. 7 and 8)

Similarly, Defendant Sidney Lewis admitted that he signed his guaranty and the ratification of it. (Exhibit N to Dkt. 42, Answer to Request Nos. 2 and 8). Based on these admissions, and the

undisputed facts recited above, Perrigo is entitled to summary judgment under the personal guaranties for the shortfall in the unpaid Notes.

**II.     Standard of Review**

Summary judgment is appropriate when the record reveals that there is no issue as to any material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, the motion should be granted. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). The existence of a scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 91 L. Ed. 2d 265 , 106 S. Ct. 2548 (1986) ("the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the nonmoving party's case").

**III.    There are no Genuine Issues of Material Fact Regarding Defendants' Liability Under the Guaranties**

Defendants admit they signed and entered into the guaranties attached as Exhibit B to Plaintiff's brief in support of its motion (Dkt. 42). (See responses to Perrigo's Requests for Admissions, Exhibits M and N to Dkt. 42). Defendants later ratified their guaranties. (Exhibit H to Dkt. 42). The guaranties expressly provide that each "[g]uarantor waives any and all defenses, claims, and discharges of Debtor or any other obligor with respect to the Indebtedness, except the defense of discharge by payment." (Exhibit B to Dkt. 42, ¶ 10).

After admitting they signed the guaranties, the only defense available to defendants is that the debt has been paid. But as set forth in John Hendrickson's affidavit, the underlying debt has not been paid. Defendant Robins even admits this in his responses to Perrigo's Requests for Admissions. (See responses to Perrigo's Requests for Admissions, Exhibit M to Dkt. 42). Accordingly, no genuine issue of material fact exists regarding defendants liability under the guaranties.

### IV. There are no Genuine Issues of Material Fact Regarding the Amount Defendants are Liable for Under the Guaranties

Similarly, there is no genuine issue of fact as to the amounts that defendants are liable for under the guaranties. Each guaranty provides the liability under the guaranty is not to exceed an amount equal to fifty percent of the unpaid debt to the extent the unpaid debt exceeds "the orderly liquidation value" of ASG.

As set forth above, ASG's assets were orderly liquidated in a commercially reasonable manner, as provided for by the Uniform Commercial Code, and the proceeds generated a gross amount of $256,445.47. Subtracting that amount from the unpaid principal ($4,097,433) equals $3,840,987.60. Defendants are each liable for half that amount ($1,920,493.80), plus interest, costs and attorneys' fees, under the Loan Agreement and Notes. Defendants did not dispute this amount. Accordingly, there is no genuine issue of material fact regarding the amount owed, and Perrigo is entitled to summary judgment.

## V. Conclusion

For the foregoing reasons, Perrigo's motion for summary judgment is **granted**, and a judgment will enter against each defendant for the amount of $1,920,493.80, plus interest, costs and attorneys' fees.

Date: July 14, 2009                                      /s/ Ellen S. Carmody
                                                                      ELLEN S. CARMODY
                                                                      United States Magistrate Judge